# In the United States District Court
## for the Southern District of Georgia
## Brunswick Division

LATISHA DENISE FARROW,

     Plaintiff,

     v.

KING & PRINCE SEAFOOD
CORPORATION,

     Defendant.

CV 2:17-150

### ORDER

Before the Court is Defendant King & Prince Seafood Corporation's (the "Company") Motion for Summary Judgment, dkt. no. 24, and Revised Motion for Summary Judgment, dkt. no. 39. In accordance with the Court's Order granting in part and denying in part Defendant's motion for judgment on the pleadings, Plaintiff's remaining claims are for discrimination based on race and gender in violation of Title VII; retaliation in violation of Title VII; and hostile work environment in violation of Title VII. See Dkt. No. 37 at 15. Defendant's Motion for Summary Judgment and Revised Motion for Summary Judgment have been fully briefed and are ripe for review. For the reasons set forth below, Defendant's Motions are **GRANTED**.

**BACKGROUND**

During discovery, Defendant served on Plaintiff written requests for admission. Dkt. No. 39-1 at 119-32. Plaintiff failed to respond within 30 days of being served these requests. Thus, pursuant to Federal Rule of Civil Procedure 36(a)(3), the requests are deemed admitted for purposes of this case. Further, pursuant to Southern District of Georgia Local Rule 56.1, "All material facts set forth in the statement required to be served by the moving party will be deemed to be admitted unless controverted by a statement served by the opposing party." Plaintiff has not responded to either of Defendant's Statements of Undisputed Facts, dkt. no. 24-1 at 1-8; dkt. no. 39-1 at 1-8. Thus, these facts are deemed admitted for the purposes of Defendant's motions.

Will Frazier, a human resources employee for Defendant, hired Plaintiff, a black female, on August 14, 2015. Dkt. No. 39-1 at 1; id. at 106-07. Plaintiff was fired on March 1, 2017, also by Will Frazier, because she violated the Company Standards of Conduct; specifically, she was reported as having threatened violence against a co-worker. dkt. no. 39-1 at 2; id. at 5. When Plaintiff was hired, she was provided with and signed an acknowledgement of the Company's Employee Handbook, which included the policy against Workplace Violence. Id. at 2. Plaintiff also was provided with and signed the Company's Standards of Conduct, which stated that certain violations of Company policy could result

in termination.  Id.  In addition to signing the Handbook and Standards of Conduct, Plaintiff testified that she knew of the rules, the standards, and the consequences for violating them. Id.

The day after Plaintiff was hired, she had an incident with one of her supervisors, Brittany Leduc.  Dkt. No. 28 at 134. Plaintiff testified that Leduc told her "You got fake eyelashes on.  You got to take them off."  Id. at 135.  In response, Plaintiff reported Leduc to human resources.  Id.  After that incident, Leduc gave Plaintiff a nickname, Lashes, which caught on and others began calling Plaintiff that.  Id. at 137.  Also in August 2015, Leduc bumped into Plaintiff and tried to take her fake eyelashes off. Id. at 143-44.  After Plaintiff was bumped by Leduc, the human resources department "tried to get [Plaintiff] to write a statement to say that we bumped into each other," but Plaintiff refused because she knew that Leduc bumped into her.  Id. at 137.

On October 2, 2015, Plaintiff received a written warning for a violation of the Company's policy of following supervisors' directions.  Id.  Plaintiff also repeatedly violated the Company's attendance rules and received written warnings on February 17 and June 15, 2016.  Id. at 3.  On June 6, 2016, Plaintiff received a written warning and a one-day suspension for horseplay, calling out a coworker, mounting the coworker, and pulling him to the

AO 72A
(Rev. 8/82)

ground.  Id.  Less than a year into her employment, Plaintiff had been written up five times.  Id.

In November 2016, it became evident that Plaintiff had a personality conflict with a coworker, Tawana Hardee, who is also a black female.  Id.  Plaintiff testified that "everybody knew" that she and Hardee did not get along.  Id.  Plaintiff believed that Hardee was "talking about her to other people, trying to get them not to like her."  Id.

On March 1, 2017, Plaintiff's coworkers reported that Plaintiff was making threats against Hardee.  Id. at 4.  One coworker, Michael Arrington, told Human Resources that he "heard Latisha say that if she sees [Hardee] outside of the job she would jump on her, beat her, and drag her all over the place."  Id. Hardee also reported to Human Resources that Plaintiff told a coworker "if I see her outside the job I'll drag her."  Id.  On March 2, 2017, Plaintiff was terminated, the "Reason for Termination" was "Violation of Company Standards of Conduct."  Id. at 125.  In the Georgia Department of Labor Separation Notice, the Reason for Separation states "Violation of Company Standards of Conduct."  Id.  Frazier terminated Plaintiff "based solely on the reports of her threats of violence against a coworker," and "did not consider Plaintiff's race, gender, or any alleged complaints from her."  Id.

Plaintiff, in written statements made on request of the Company about the incidents leading to her termination, did not make any statement about race, gender, discrimination, or retaliation. Id. at 5. However, she later filed an EEOC charge. On the first page of Plaintiff's EEOC charge, Plaintiff stated that she "was terminated . . . because another co-worker . . . told Human Resources . . . that I was harassing her . . . [and that] I said I was going to beat her up after work." Id. In her written statement to the EEOC, Plaintiff fails to mention race, gender, or discrimination. Id. Further, Plaintiff has admitted that as a result of her disciplinary records, the Company's policies against violence, horseplay, and threatening communications, and the reported threats by her against a coworker, she was not qualified for continued employment with the Company. Id. at 125.

The Company has fired two white males for engaging in similar misconduct as Plaintiff, but neither of them had a prior record of progressive discipline. Id. at 7. The first was fired for using racial slurs which could easily lead to violence. Id. The second was fired for verbally challenging another working and then approaching him with his fists up. Id.

Plaintiff filed this action to recover damages and other compensation, which Plaintiff claims is owed to her under Title VII.

AO 72A
(Rev. 8/82)

## LEGAL STANDARD

Summary judgment is required where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if it "might affect the outcome of the suit under the governing law." FindWhat Inv'r Grp. v. FindWhat.com, 658 F.3d 1282, 1307 (11th Cir. 2011) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). A dispute is "genuine" if the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. In making this determination, the court is to view all of the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor. Johnson v. Booker T. Washington Broad. Serv., Inc., 234 F.3d 501, 507 (11th Cir. 2000).

The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). The movant must show the court that there is an absence of evidence to support the nonmoving party's case. Id. at 325. If the moving party discharges this burden, the burden shifts to the nonmovant to go beyond the pleadings and present affirmative evidence to show that a genuine issue of fact does exist. Anderson, 477 U.S. at 257.

The nonmovant may satisfy this burden in two ways. First, the nonmovant "may show that the record in fact contains supporting

AO 72A
(Rev. 8/82)

evidence, sufficient to withstand a directed verdict motion, which was 'overlooked or ignored' by the moving party, who has thus failed to meet the initial burden of showing an absence of evidence." Fitzpatrick v. City of Atlanta, 2 F.3d 1112, 1116 (11th Cir. 1993) (quoting Celotex Corp., 477 U.S. at 332 (Brennan, J., dissenting)). Second, the nonmovant "may come forward with additional evidence sufficient to withstand a directed verdict motion at trial based on the alleged evidentiary deficiency." Id. at 1117. Where the nonmovant attempts to carry this burden instead with nothing more "than a repetition of his conclusional allegations, summary judgment for the [movant is] not only proper but required." Morris v. Ross, 663 F.2d 1032, 1033-34 (11th Cir. 1981) (citing Fed. R. Civ. P. 56(e)).

## DISCUSSION

### I. Title VII Discrimination on the Basis of Race and Gender

Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2(a)(1) makes it unlawful for an employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." "This provision forbids 'disparate treatment' of, or 'intentional discrimination' against, employees on the basis of race[, gender,] or national origin." Jefferson v. Sewon Am., Inc., 891 F.3d 911,

AO 72A
(Rev. 8/82)

920 (11th Cir. 2018) (quoting Equal Emp't Opportunity Comm'n v. Abercrombie & Fitch Stores, Inc., 135 S. Ct. 2028, 2032 (2015)). "To establish a prima facie case for disparate treatment in a race discrimination case, the plaintiff must show that: (1) she is a member of a protected class; (2) she was subjected to an adverse employment action; (3) her employer treated similarly situated employees outside of her protected class more favorably than she was treated; and (4) she was qualified to do the job." Burke-Fowler v. Orange Cty., Fla., 447 F.3d 1319, 1323 (11th Cir. 2006). Regarding the third element, to determine if an employee is similarly situated, "it is necessary to consider whether the employees are involved in or accused of the same or similar conduct and are disciplined in different ways." Jones v. Bessemer Carraway Med. Ctr., 137 F.3d 1306, 1311 (11th Cir.) (quoting Holifield v. Reno, 115 F.3d 1555, 1562 (11th Cir. 1997)), opinion superseded in part on denial of reh'g, 151 F.3d 1321 (11th Cir. 1998). "The most important factors in the disciplinary context are the nature of the offenses committed and the nature of the punishments imposed." Id. "[T]he quantity and quality of the comparator's misconduct [must] be nearly identical." McCann v. Tillman, 526 F.3d 1370, 1373 (11th Cir. 2008) (quoting Burke-Fowler v. Orange County, Fla., 447 F.3d 1319, 1323 (11th Cir.2006)).

Defendant argues that Plaintiff has not established the third or fourth elements of a prima facie case, and it has provided

AO 72A
(Rev. 8/82)

evidence showing that Plaintiff cannot prove these elements as a matter of law. First, Defendants have established that two white males were fired for engaging in similar misconduct and that they had no prior record of progressive discipline, while Plaintiff did. Turning to the fourth element, Plaintiff has admitted that as a result of her disciplinary records, the Company's policies against violence, horseplay, and threatening communications, and the reported threats by her against a coworker, she was not qualified for continued employment with the Company. Because Defendant has shown that there is no genuine issue of material fact as to the third and fourth elements of Plaintiff's discrimination claims, the burden shifts to Plaintiff to establish a genuine issue of material fact on both of these elements. Plaintiff has not satisfied this burden.

Plaintiff has put forth some evidence regarding the third element for her racial discrimination claim (but not her gender discrimination claim). Plaintiff testified that Leduc bumped into her and touched her eyelashes and that Leduc was not punished for this and that Leduc was not even called into the human resources office to talk about either incident. The issue is whether Leduc is similarly situated to Plaintiff. She is not because "the quantity and quality of the comparator's misconduct [is] not nearly identical." McCann, 526 F.3d at 1373. Leduc bumped into Plaintiff and attempted to take off her fake eyelashes and told Plaintiff,

AO 72A
(Rev. 8/82)

"You got fake eyelashes on. You got to take them off." Dkt. No. 28 at 134. This conduct is not nearly identical to Plaintiff's history of tardiness, horseplay, and threatening to beat and drag around another employee. In other words, as compared to Leduc, Plaintiff had a greater history of conduct violations and beating and dragging a coworker is far more severe than bumping into one and attempting to take off fake eyelashes. Thus, no reasonable jury could find that this element is met, especially when considering that two white males were terminated for conduct similar to Plaintiff's. Nevertheless, even if a reasonable jury could find for Plaintiff on the third element, which one cannot, Plaintiff has admitted that she was not qualified for the job because of her repeated violations of the Company's policies. As a matter of law, then, Plaintiff cannot satisfy the third and fourth elements. Accordingly, Defendant's Motions with respect to Plaintiff's racial and gender discrimination claims are due to be **GRANTED**.

## II. Title VII Hostile Work Environment

> To establish a hostile work environment claim under Title VII, a plaintiff must show that the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of ... employment and create an abusive working environment. To prove a prima facie case of hostile work environment, a plaintiff must establish that: (1) he or she belonged to a protected group, (2) he or she was subjected to unwelcome harassment, (3) the harassment was based on a protected characteristic, (4) the harassment was sufficiently

10

severe or pervasive to alter the terms and conditions of his or her employment and create an abusive working environment, and (5) a basis exists for holding the employer liable.

It is a bedrock principle that not all objectionable conduct or language amounts to discrimination under Title VII. Therefore, only conduct that is *based on* a protected category . . . may be considered in a hostile work environment analysis. see also Reeves v. C.H. Robinson Worldwide, Inc., 594 F.3d 798, 809 n.3 (11th Cir.2010) ("[T]he Courts of Appeals have uniformly observed that Title VII is not a civility code, and that harassment must discriminate on the basis of a protected characteristic in order to be actionable."). Innocuous statements or conduct, or boorish ones that do not relate to the [age or gender] of the actor or of the offended party (the plaintiff), are not counted.

Trask v. Sec'y, Dep't of Veterans Affairs, 822 F.3d 1179, 1195 (11th Cir. 2016) (internal quotation marks and citations omitted).

In one of Plaintiff's filings, she states that she "had been harassed repeatly [sic] over and over by different employees," and that "nobody ever came and protected me from anybody." Dkt. No. 38 at 3. She testified that she was called Lashes by other employees and that Hardee repeatedly harassed her. This is the extent of Plaintiff's evidence regarding this claim.

Defendant argues that Plaintiff has failed to show any evidence that any event of which she testified or complained of was motivated by racial or gender animus. In other words, Plaintiff cannot satisfy the third element that the harassment was based on a protected characteristic. Having shown that no genuine issue of material fact exists for the third element, the burden

shifts to Plaintiff. Plaintiff cannot satisfy her burden of showing a genuine issue of material fact as to the third element.

Looking at the third element, Plaintiff has not shown any evidence that any of the harassment that she testified about was based on a protected characteristic. She simply has shown evidence that she testified under oath that she was harassed. The reason for the harassment, she testified, was "because I wore lashes and I intimidate people. That's why. That's really why. . . . that was the problem with [Hardee] and [Leduc]." Dkt. No. 28 at 157. Thus, Plaintiff testified that she was not harassed because of her race or gender but because she was intimidating to others—specifically, Hardee and Leduc. Accordingly, no reasonably jury could find that the third element is satisfied based on this record.

For these reasons, Defendant's Motions with respect to the hostile work environment claim are due to be **GRANTED**.

### III. Title VII Failure to Promote

"[T]o prevail on a claim of failure to promote, a plaintiff may establish a prima facie case of [ ] discrimination by showing that: (1) she is a member of a protected class; (2) she was qualified and applied for the promotion; (3) she was rejected despite her qualifications; and (4) other equally or less qualified employees who were not members of the protected class were

AO 72A
(Rev. 8/82)

promoted." Wilson v. B/E Aerospace, Inc., 376 F.3d 1079, 1089 (11th Cir. 2004).

Defendant argues that Plaintiff's disciplinary record shows that she was not qualified for any employment.[1] Thus, it argues that Plaintiff cannot satisfy the second element. Given that Plaintiff has admitted that she was not qualified for the job she held, and necessarily any promotion, because of her repeated violations of Company policies, she has also admitted that she cannot satisfy this element. Thus, Plaintiff's failure to promote claim must fail as a matter of law. Accordingly, Defendant's Motions with respect to the failure to promote claim are due to be **GRANTED**.

## CONCLUSION

For these reasons, Defendant's Motion for Summary Judgment and revised Motion for Summary Judgment are **GRANTED** with respect to all claims. The clerk of court is **DIRECTED** to close this case.

**SO ORDERED**, this 12th day of February, 2019.

HON. LISA GODBEY WOOD, JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA

---

[1] Defendant has provided evidence that it has discovered during this litigation that Plaintiff falsified her initial employment application and thus that she was never qualified to work at the Company. Even if this was true, Defendant did not know this during Plaintiff's employment. Thus, Defendant cannot use this as a reason to not have promoted Plaintiff while she was working for the Company.

AO 72A
(Rev. 8/82)